**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JACK HILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE LOVESAC COMPANY,<br><br>Defendant. | Case No. ____________________<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Jack Hill ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Defendant The Lovesac Company ("Lovesac" or "Defendant"), and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Defendant for its failure to secure and safeguard Plaintiff's and Class members' personally identifiable information ("PII"), including names and Social Security numbers.

2. Lovesac is a furniture company based in Connecticut.

3. Between approximately May 27 and May 30, 2025, an unauthorized third party gained access to Lovesac's employee email systems and accessed and acquired files containing the PII of Lovesac's current and former customers and employees, including Plaintiff and Class members (the "Data Breach").

4. Lovesac owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against

unauthorized access and disclosure. Lovesac breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class members' PII from unauthorized access and disclosure.

5. As a result of Lovesac's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all persons whose PII was exposed as a result of the Data Breach, which occurred between approximately May 27 and May 30, 2025.

6. Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiff Jack Hill***

7. Plaintiff is a citizen and resident of Illinois.

8. Plaintiff is a former employee of Lovesac. As a condition of providing employment to Plaintiff, Lovesac required Plaintiff to provide it with his PII.

9. Based on representations made by Lovesac, Plaintiff believed that Lovesac had implemented and maintained reasonable security and practices to protect his PII. With this belief in mind, Plaintiff provided his PII to Lovesac in exchange for receiving employment from Lovesac.

10. At all relevant times, Lovesac stored and maintained Plaintiff's PII on its network systems, including the systems impacted in the Data Breach.

11. Plaintiff received a notice letter from Lovesac notifying him that his PII was in the files accessed and acquired by an unauthorized third party in the Data Breach.

12. Had Plaintiff known that Lovesac does not adequately protect the PII it collects and maintains, he would not have agreed to provide his PII to, or obtained employment from, Lovesac.

13. As a result of the compromise of his PII in the Data Breach, Plaintiff has become a target for cybercriminals' malicious phishing and scam attempts. Since the Data Breach, Plaintiff has received several fraudulent letters purporting to be from the Internal Revenue Service, experienced a significant increase in the number of spam calls, texts, and emails he receives, and has been harassed by collections calls for debts he did not incur.

14. Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent verifying the veracity of the notice letter he received, researching for more information about the Data Breach, and dealing with phishing and scam attempts.

15. Plaintiff has experienced fear, frustration, and stress because his PII was accessed and stolen by unauthorized third parties in the Data Breach, including because he must closely monitor his PII for signs of misuse and identity theft for the rest of his life.

16. As a direct result of the Data Breach, Plaintiff has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of his PII.

***Defendant The Lovesac Company***

17. Defendant The Lovesac Company is a Delaware corporation with its principal place of business located at 421 Atlantic Street, Suite 200, Stamford, CT 06901. It may be served through its registered agent: Corporation Service Company, 225 Asylum Street, 20th Floor, Hartford, CT 06103.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

19. This Court has general personal jurisdiction over Defendant because it maintains its principal place of business in this State and regularly transacts business within this State.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of Lovesac*

21. Lovesac is a company that designs, manufactures, and sells furniture.[1] Lovesac has 267 showrooms in 43 states.[2]

---

[1] Lovesac, *Annual Report (Form 10-K)* (Apr. 10, 2025), https://investor.lovesac.com/sec-filings/all-sec-filings/content/0001628280-25-017241/0001628280-25-017241.pdf.
[2] Lovesac, *Quarterly Report (Form 10-Q)* (June 12, 2025), https://investor.lovesac.com/sec-filings/all-sec-filings/content/0001628280-25-030861/0001628280-25-030861.pdf.

22. In the regular course of its business, Lovesac collects and maintains the PII of its customers and employees, including Plaintiff and Class members. Lovesac requires customers and employees to provide it with their PII, including the PII stolen in the Data Breach, before it provides them its products or employment.

23. Lovesac admits that it collects, stores, and transmits the PII of its customers and employees.[3]

24. Lovesac knew of the risk of a targeted attack for the purpose of stealing PII, like the Data Breach, as evidenced by its 2025 Form 10-K filing, where it acknowledges the risks to its business includes "significant disruptions of or breach in security of information technology systems and violation of data privacy laws."[4]

25. In its Privacy Policy, Lovesac promises it is "committed to respecting your privacy and recognizing your need for appropriate protection and management of your personal information."[5] Lovesac promises it will only retain PII for "as long as is reasonably necessary to fulfill the purposes for which it was collected."[6] Lovesac represents it will only share PII with third parties as authorized in the Privacy Policy.[7] Lovesac promises it will only use any "sensitive" personal information, including Social Security numbers, as necessary to provide services or with customers' consent.[8]

26. Lovesac represents it maintains "physical, electronic, and procedural safeguards to protect the confidentiality and security of information."[9]

---

[3] *Form 10-K*, *supra* note 1.
[4] *Id.*
[5] *Privacy Policy*, LOVESAC (Dec. 27, 2022), https://www.lovesac.com/privacy-policy.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

27. Plaintiff and Class members are current or former customers and employees of Lovesac who entrusted Lovesac with their PII in exchange for obtaining products and services or employment.

***The Data Breach***

28. Between approximately May 27 and May 30, 2025, an unauthorized third party gained access to a Lovesac employee's email account and accessed and acquired the PII of Plaintiff and Class members, including their names and Social Security numbers.[10]

29. Despite discovering that its customers' and employees' PII was accessed and stolen on or about May 30, 2025, Lovesac waited until approximately September 4, 2025—over three months after discovering the Data Breach—to begin notifying Plaintiff and Class members that the Data Breach occurred and that their PII was accessed and acquired by unauthorized persons.[11]

30. In its notice letter, Lovesac acknowledges the substantial risk of fraud and identity theft Plaintiff and Class members now faced, as it encourages them to "remain vigilant against incidents of identity theft and fraud."[12]

31. Lovesac's failure to promptly notify Plaintiff and Class members that their PII was disclosed, accessed, and stolen virtually ensured that the unauthorized third parties who exploited its security lapses could monetize, misuse, or disseminate that PII before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

---

[10] Lovesac, *Data Breach Notice Letter*, ME. ATT'Y GEN. (Sept. 4, 2025), available at: https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b6176a1d-c0c6-482a-b38e-6ec100f1bb79.html.

[11] *See id.*

[12] *Id.*

***Defendant Knew that Criminals Target PII***

32. At all relevant times, Defendant knew, or should have known, that the PII it collects and stores was a target for malicious actors. Despite such knowledge, Lovesac failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from unauthorized disclosures and cyberattacks that they should have anticipated and guarded against.

33. It is well known among companies that store sensitive personally identifiable information that such information—such as the PII stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[13]

34. PII is a valuable property right.[14] The value of PII as a commodity is measurable.[15] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[16] American companies are estimated to have spent over $19 billion on acquiring

---

[13] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 AM), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[14] *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[15] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[16] Organization for Economic Co-operation and Development, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

personal data of consumers in 2018.[17] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

35. As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims. One such example is the development of "fullz" packages, where cybercriminals connect data from a data breach with information from other sources to create a complete dossier on an individual, which can then be sold multiple times and used to commit a variety of fraud.[18]

36. Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[19]

---

[17] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[18] *See* Julia Kagan, *Fullz: Definition, Examples, Minimizing Risk*, INVESTOPEDIA (Aug. 31, 2022), https://www.investopedia.com/fullz-definition-4684000.

[19] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

37. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Theft of PII Has Grave and Lasting Consequences for Victims***

38. Theft of PII can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[20] [21]

39. Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[22]

[20] *See* Federal Trade Commission, *What to Know About Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Sept. 10, 2025).

[21] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[22] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

40. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that almost 20% of victims of identity misuse needed more than a month to resolve issues stemming from identity theft.[23]

41. There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[24]

42. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by someone intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

***Damages Sustained by Plaintiff and Class Members***

43. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised

[23] Identity Theft Resource Center, *2023 Consumer Aftermath Report*, IDENTITY THEFT RES. CTR. (2023), https://www.idtheftcenter.org/publication/2023-consumer-impact-report/ (last accessed Sept. 10, 2025).

[24] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## CLASS ALLEGATIONS

44. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

45. Plaintiff brings this action on behalf of himself and all members of the following Class of similarly situated persons:

> All persons whose personally identifiable information was accessed in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

46. Plaintiff also brings this action on behalf of himself and all members of the following subclass (the "Illinois Subclass")

> All citizens of Illinois whose personally identifiable information was accessed in the Data Breach by unauthorized persons, including all persons who were sent a notice of the Data Breach.

47. Excluded from the Class are The Lovesac Company, and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge.

48. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49. The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. While Lovesac has not released the number of

individuals affected in the Data Breach, due to Lovesac's large number of employees and customers, upon information and belief thousands of individuals were affected.[25]

50. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

c. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

d. Whether Defendant breached those duties to protect Plaintiff's and Class members' PII; and

e. Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

51. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

52. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as

---

[25] *See, e.g.*, *Form 10-K*, *supra* note 1 (indicating Lovesac has "920 full-time associates and 1,104 part-time associates").

described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

53. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

54. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress from Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

55. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

56. Lovesac owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting the PII it collected and stored.

57. Lovesac knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII, and the importance of maintaining secure systems. Lovesac knew or should have known of the many data breaches that targeted companies that collect and store PII in recent years.

58. Given the nature of Lovesac's business, the sensitivity and value of the PII it collects and maintains, and the resources at its disposal, Lovesac should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

59. Lovesac breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

60. It was reasonably foreseeable to Lovesac that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

61. But for Lovesac's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, the Data Breach would not have occurred and their PII would not have been compromised.

62. As a result of Lovesac's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Lovesac's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## **COUNT II**
## **NEGLIGENCE PER SE**

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Lovesac's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Lovesac, of failing to employ reasonable measures to protect and secure PII.

65. Lovesac's duties also arise from the Illinois Personal Information Protection Act ("IPIPA"), 815 ILCS 530/45(a) which requires:

> A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure.

815 ILCS. 530/45.

66. Additionally, under 815 ILCS 530/10, Lovesac had a duty to "notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach . . . in the most expedient time possible and without unreasonable delay." 815 ILCS 530/10.

67. Lovesac violated Section 5 of the FTCA and IPIPA by failing to use reasonable measures to protect Plaintiff's and other Class members' PII, by failing to provide timely notice, and by not complying with applicable industry standards. Lovesac's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

68. Lovesac's violations of Section 5 of the FTCA and IPIPA constitute negligence per se.

69. Plaintiff and Class members are within the class of persons that Section 5 of the FTCA and IPIPA were intended to protect.

70. The harm occurring as a result of the Data Breach is the type of harm that Section 5 of the FTCA and IPIPA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Breach.

71. It was reasonably foreseeable to Lovesac that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would

result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

72. The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Lovesac's violations of Section 5 of the FTCA and IPIPA. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Lovesac's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT III
## BREACH OF IMPLIED CONTRACT

73. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

74. In connection with receiving products and services or employment, Plaintiff and all other Class members entered into implied contracts with Lovesac.

75. Pursuant to these implied contracts, Plaintiff and Class members provided Lovesac with their PII. In exchange, Lovesac agreed to, among other things, and Plaintiff understood that Lovesac would: (1) provide products and services or employment to Plaintiff and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII; and (3) protect Plaintiff's and Class members' PII in

compliance with federal and state laws and regulations and industry standards. Lovesac benefitted from receiving Plaintiff's and Class members' PII, as they were required to use it for their business operations.

76. The protection of PII was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Lovesac, on the other hand. Indeed, as set forth *supra*, Lovesac recognized the importance of data security and the privacy of PII in its privacy policy. Had Plaintiff and Class members known that Lovesac would not adequately protect their PII, they would not have provided their PII to Lovesac or obtained products and services or employment from Lovesac.

77. Plaintiff and Class members performed their obligations under the implied contract when they provided Lovesac with their PII and paid Lovesac or provided their labor to Lovesac.

78. Lovesac breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII, and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class members' PII in a manner that complies with applicable laws, regulations, and industry standards.

79. Lovesac's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

80. Plaintiff and all other Class members were damaged by Lovesac's breach of implied contracts because: (i) they provided their PII to Lovesac in exchange for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft—risks

justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**UNJUST ENRICHMENT**

81. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

82. This claim is pleaded in the alternative to the breach of implied contract claim.

83. Plaintiff and Class members conferred a monetary benefit upon Lovesac in the form of monies paid to Lovesac for products and services or provided the value of their labor, and through the provision of their PII. Plaintiff and Class members did so with an implicit understanding that Lovesac would use some of these payments or the value created by their labor to protect the PII it collects, stores, uses to provide products and services or employment.

84. Lovesac accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members. Lovesac also benefitted from the receipt of Plaintiff's and Class members' PII, as this was used to facilitate its business operations.

85. As a result of Lovesac's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments or labor made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

86. Lovesac should not be permitted to retain the money belonging to Plaintiff and Class members because Lovesac failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class members paid for or provided labor for and that were otherwise mandated by federal, state, and local laws and industry standards.

87. Plaintiff and Class members have no adequate remedy at law.

88. Lovesac should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT V**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/2, *et seq*. ("ICFA")**
***On Behalf of the Illinois Subclass***

89. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90. Plaintiff brings this claim individually and on behalf of the Illinois Subclass.[26]

91. Lovesac offered and continues to offer products and services in the State of Illinois.

92. Plaintiff and Class members purchased and received products and services from Lovesac for personal, family, or household purposes.

93. Lovesac engaged in unlawful and unfair practices in violation of the ICFA by failing to implement and maintain reasonable security measures to protect and secure Plaintiff's and Class members' PII in a manner that complied with applicable laws, regulations, industry standards, and Lovesac's representations.

[26] As used in this claim, "Class members" refers to members of the Illinois Subclass.

94. Lovesac's duties also arise from the Illinois Personal Information Protection Act, 815 ILCS 530/45(a) which requires:

> A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure.

815 ILCS 530/45. Lovesac violated this duty by failing to implement reasonably secure data security policies.

95. Lovesac further violated the ICFA by failing to notify Plaintiff and Class members of the Data Breach in a timely manner. The Illinois Personal Information Protection Act requires entities that experience a data breach to notify Illinois residents "in the most expedient time possible and without unreasonable delay." 815 ILCS 530/10. Violation of the Illinois Personal Information Protection Act constitutes an unlawful practice under the ICFA. 815 ILCS 530/20.

96. Due to the Data Breach, Plaintiff and Class members have lost property in the form of their PII. Further, Lovesac's failure to adopt reasonable practices in protecting and safeguarding Plaintiff's and Class members' PII will force Plaintiff and Class members to spend time or money to protect against identity theft. Plaintiff and Class members are now at a higher risk of fraud, identity theft, and other crimes. This harm sufficiently outweighs any justifications or motives for Lovesac's practice of collecting and storing PII without appropriate and reasonable safeguards to protect such information.

97. As a result of Lovesac's violations of the ICFA, Plaintiff and Class members have suffered and will continue to suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-

of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Lovesac's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 18, 2025

Respectfully submitted,

/s/ Michael J. Reilly
Michael J. Reilly, Esq.
**CICCHIELLO & CICCHIELLO, LLP**
364 Franklin Avenue
Hartford, CT 06114
Juris No. 419987
Tel: 860-296-3457
Fax: 860-296-0676
mreilly@cicchielloesq.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiff*

**Pro hac vice* forthcoming